Terry REYNOLDS, Plaintiff–Respondent,

v.

Bruce DENNISON, M.D., Defendant–Appellant.

No. 21859.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 30, 1998.

Motion for Rehearing and Transfer to
Supreme Court Denied Nov. 23, 1998.

Application for Transfer Denied
Jan. 19, 1999.

Elizabeth A. Blaich, Clinton D. Summers, Summers, Walsh, Pritchett & Blaich, P.C., Poplar Bluff, for Appellant.

Jeffrey S. Maguire, Thomasson, Gilbert, Cook, Remley & Maguire, Cape Girardeau, for Respondent.

PREWITT, Presiding Judge.

This is a malpractice action against a medical physician. Plaintiff asserted that Defendant was negligent following an operation wherein polyps were removed from his nasal passages, as Defendant failed to diagnose that the surgery caused "a herniation of the dura with leakage of cerebral spinal fluid." Following jury trial, Plaintiff received a favorable verdict awarding him damages of $300,000.00. Judgment was entered accordingly. Defendant appeals.

For his first point, Defendant contends that the trial court erred in presenting to the jury a verdict-director instruction "that allowed the jury to find Defendant negligent

on a date that was barred by Section 516.105 RSMO (1994), the two year statute of limitations ... in that such instruction allowed the jury to find that Dr. Dennison was negligent on either May 13, 1991, *or* August 24, 1990, the latter date being more than two years prior to the lawsuit, in that there was no treatment between the two dates as would extend the statute under an exception for 'continuous care'."

■ As Defendant appeared to acknowledge in his point, Missouri courts have recognized a continuing care exception to statutes of limitation in claims against certain healthcare professionals. *Adams v. Lowe,* 949 S.W.2d 109, 111 (Mo.App.1997); *Thompson v. Volini,* 849 S.W.2d 48, 50 (Mo.App.1993). This exception applies when the treatment which continues is of such a nature as to charge the defendant with the duty of continuing care and treatment which is essential to recovery. *Adams,* 949 S.W.2d at 111. *See also Green v. Washington University Med. Ctr.,* 761 S.W.2d 688, 689 (Mo.App.1988).[1]

■ "The duty to attend the patient continues so long as required unless the physician-patient relationship is ended by (1) the mutual consent of the parties, (2) the physician's withdrawal after reasonable notice, (3) the dismissal of the physician by the patient, or (4) the cessation of the necessity that gave rise to the relationship." *Weiss v. Rojanasathit,* 975 S.W.2d 113, 119–20 (Mo.banc, 1998). "Absent good cause to the contrary, where the doctors knows or should know that a condition exists that requires further medical attention to prevent injurious consequences, the doctor must render such attention or must see to it that some other competent person does so until termination of the physician-patient relationship." *Id.* at 120.

Defendant is a specialist known as a otolaryngologist, often referred to as an ear-nose-and-throat specialist. On August 8, 1990, Defendant performed sinus surgery on Plaintiff to remove nasal polyps. After two post-operative visits, the physician thought

---

**1.** "Treatment" includes measures necessary for the physical well being of the patient. *Patrich v. Menorah Med. Ctr.,* 636 S.W.2d 134, 139–140 (Mo.App.1982). *See also Bryant v. Montgomery*

*Ward & Co.,* 416 S.W.2d 195, 199 (Mo.App.1967)("treatment" is applying remedies; the course pursued for remedial purposes).

Plaintiff was having no significant problem and he was released from treatment on August 22, 1990, apparently with the understanding that he should come back if he had "complications." In May, 1991, Plaintiff was admitted to the hospital with meningitis by his regular physician. That physician had initially sent Plaintiff to Defendant and again called in Defendant, who examined Plaintiff on May 13, 1991. According to the hospital's "consultation report," the reason Defendant was consulted was the patient's "sinus disease." The report shows the diagnosis as: "Possible sinusitis. Cannot rule out the possibility of residual disease resulting from above infection, which suggests coronal views of the paranasal sinuses. Will review when completed."

■ Defendant testified the reason he was "asked to see" Plaintiff on May 13, 1991, was because of the surgery he had performed on Plaintiff. Defendant examined him, failing to find the leakage of which Plaintiff complains, and which was later corrected. This appears to us to be such treatment as to fall under the "continuing care" theory, which would make the petition, filed on February 26, 1993, within the two-years required by Section 516.105, RSMo 1994, and would not bar negligence that might have occurred in August of 1990. Whether or not Defendant knew it, under the evidence presented, Plaintiff's condition was a complication of the surgery Defendant performed. Defendant testified, and it was not disputed but that the physician-patient relationship would continue through "complications," unless, of course, the relationship was otherwise terminated. Under Plaintiff's evidence, complications were present on May 13, 1991, and no termination of the physician-patient relationship had previously occurred. Point I is denied.

■ For his second point, Defendant contends that the trial court erred in submitting the verdict director, "in that there is no medical evidence to support a finding of negligence against Dr. Dennison for failure to diagnose a CSF leak on August 24, 1990."[2]

In determining if the instruction had evidentiary support, the evidence and reasonable inferences therefrom are considered in the light most favorable to the party submitting the instruction. *King v. Unidynamics Corp.*, 943 S.W.2d 262, 267 (Mo.App.1997). So viewed, this point has no merit.

There was evidence that Plaintiff was leaking clear fluid and Defendant knew of that, but thought Plaintiff's sinuses were draining. A medical expert testified that this leak should have been investigated by Defendant to determine from where it was coming, and had Defendant made a proper diagnosis, it could have been treated and the meningitis prevented. Point II is denied.

For his remaining point, Defendant asserts that the trial court erred in allowing the jury to consider certain "damages resulting from the craniotomy repairing the defect, along with damages resulting from the first meningitis of May 7, 1991," as they would not have been avoided, even if the leak had been detected on May 13, 1991.

This contention is premised on the assertion that the jury should not have been allowed to consider the August, 1990, failure to diagnose, as there was no evidence of negligence at that time, and even if so, any claim for negligence in August of 1990, was barred by the statute of limitations; or, if the jury found no negligence in August, 1990, but negligence on May 13, 1991, then the jury should not have considered damages prior to May 13, 1991. The latter may well be true, but we have to assume that the jury correctly followed its directions. If they found Defendant negligent for failure to diagnose Plaintiff's condition in August of 1990, then all of the complained-of damages were properly considered.[3]

If the jury found Defendant negligent on May 13, 1991, then we have to presume they did not consider the evidence of damages prior to then. In either event, under the

---

**2.** Although the instruction refers to "August 24, 1990," the parties agree that the date should have been "August 22, 1990," the last time Defendant saw Plaintiff before May 13, 1991.

**3.** In discussing Defendant's first two points, we determined that the jury could properly consider whether Defendant was negligent in August of 1990.

circumstances here, we cannot say that the damages were excessive. Point III is denied.

The judgment is affirmed.

CROW and BARNEY, JJ., concur.