

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **FRANK WOLFE AND** | ) | |
| **KAREN WOLFE,** | ) | |
| | ) | |
| **Appellants,** | ) | |
| | ) | **WD87357** |
| **V.** | ) | |
| | ) | **OPINION FILED:** |
| **COURTNYE ALLYSON** | ) | **APRIL 29, 2025** |
| **WALKER, M.D., ET AL.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Jon E. Beetem, Judge

Before Special Division: Cynthia L. Martin, Presiding Judge, W. Douglas Thomson,
Judge and Joseph M. Ellis, Special Judge

Frank and Karen Wolfe[1] ("Wolfe") appeal from the trial court's grant of summary

judgment in favor of Courtnye Allyson Walker,[2] M.D., ("Dr. Walker") and SSM

Regional Health Services d/b/a SSM Medical Group and d/b/a St. Mary's Hospital

("SSM") (collectively "Respondents") which held that Wolfe's claims of medical

---

[1] Karen Wolfe's claim in this case is for loss of consortium which is derivative of
Frank Wolfe's medical negligence claims. For ease of reference, we refer to Frank and
Karen Wolfe collectively as "Wolfe" even though the medical care in this opinion was
only provided to Frank Wolfe.

[2] The judgment from which Wolfe's appeal is taken spells Dr. Walker's name as
"Courtney." In the parties' briefs, Dr. Walker's first name is spelled as "Courtnye." We
have elected to use the parties' spelling of Dr. Walker's first name.

negligence were barred by the two-year statute of limitations and that the statute of limitations was not tolled by the continuing care exception. Finding no error, we affirm.

## Factual and Procedural History[3]

On February 8, 2019, Dr. Walker performed a coronary artery bypass graft ("CABG") surgery on Wolfe. This procedure required Dr. Walker to separate and then wire back together Wolfe's sternum. On February 18, 2019, a CT scan revealed that four of the six wires had pulled through the bone of the sternum, a condition known as sternal dehiscence.[4] Because he was stable and showed no signs of infection, Dr. Walker told Wolfe during a consultation on February 20, 2019, that she was not going to perform a second surgery to repair the pulled wires. Dr. Walker did, however, order another CT scan to be completed on March 2, 2019, so she could compare it to the February 18, 2019 CT scan.

On March 13, 2019, Wolfe had a post-operative follow-up visit with Dr. Walker. After comparing the March 2, 2019 and February 18, 2019 CT scans, Dr. Walker concluded that Wolfe's sternal dehiscence had not changed and that his resulting sternal

---

[3]"When reviewing the entry of summary judgment, we view the record in the light most favorable to the party against whom the judgment was entered and accord the non-movant all reasonable inferences from the record." *Montgomery v. Coreslab Structures (Missouri), Inc.*, 697 S.W.3d 766, 769 n.2 (Mo. App. W.D. 2024) (quoting *Cox v. Callaway Cnty. Sheriff's Dep't*, 663 S.W.3d 842, 845 n.1 (Mo. App. W.D. 2023)). We have compiled the factual background from the Rule 74.04(c) uncontroverted facts contained within the summary judgment pleadings. *Id.*

All rule references are to *Missouri Court Rules, Volume 1 -- State, 2023* unless otherwise indicated.

[4]A "sternal dehiscence" is "the act of the sternum coming apart." If the sternum has separated and is no longer going to heal together, then the "sternal dehiscence" is referred to as a "sternal non-union."

2

non-union was stable. Dr. Walker observed no mediastinitis (inflammation or infection) in Wolfe's chest cavity. As a result, Dr. Walker again told Wolfe that she was not going to perform a second surgery to repair the sternal non-union. Dr. Walker told Wolfe he could elect to pursue surgical repair of the sternal non-union in the future if pain and discomfort warranted the risk. Dr. Walker told Wolfe that he did not need to return for any further follow-up visits and released Wolfe from care for the CABG surgery on March 13, 2019.

On July 26, 2019, Wolfe visited Dr. Walker's office without an appointment. Wolfe told Dr. Walker's nurse that he had pulled the starting cord on his lawnmower and then began experiencing chest pain radiating into his right underarm. The nurse told Wolfe that she would relay his complaints to Dr. Walker. The nurse called Wolfe on July 29, 2019, and recommended he take ibuprofen to give any swelling and discomfort time to improve. The nurse also told Wolfe that if his symptoms did not improve within "3 weeks from the injury," Dr. Walker would consider ordering a CT scan to re-evaluate the sternal non-union.

Wolfe's symptoms did not improve. On August 7, 2019, Dr. Walker ordered a CT scan of Wolfe's chest. Dr. Walker reviewed the CT scan results and observed a slight thickening in the right chest muscle which she attributed to the injury Wolfe reported after using the pull-start cord on his lawn mower. Dr. Walker saw no change in Wolfe's sternal non-union nor any signs of infection. Dr. Walker recommended that Wolfe continue taking ibuprofen and to give the swelling and discomfort in his chest time to improve.

On August 17, 2019, Wolfe went to the emergency room at the University of Missouri Hospital because he was still experiencing pain. Wolfe was diagnosed in the emergency room with sternal dehiscence, a condition he was already aware that he had. Wolfe was also diagnosed with anterior mediastinitis (infection) with abscess, osteomyelitis, and acute MSSA bacteremia.

Wolfe filed a petition for damages on July 16, 2021, against Dr. Walker and SSM asserting negligence and loss of consortium as a result of the negligent performance of medical services.[5] Wolfe alleged specific acts of negligence related to Dr. Walker's care from February 13, 2019, until March 13, 2019, (when Wolfe was released from Dr. Walker's care related to the CABG surgery). And Wolfe alleged specific acts of negligence relating to Dr. Walker's care on July 26, 2019, and August 8, 2019, after Wolfe reported injuring himself using a lawnmower. Dr. Walker and SSM filed an answer to Wolfe's petition on August 17, 2021, asserting, among other affirmative defenses, that Wolfe's claims of medical negligence were time-barred by the two-year statute of limitations set forth in section 516.105.[6]

On November 8, 2023, Dr. Walker and SSM filed a motion for partial summary judgment pursuant to Rule 74.04. Dr. Walker and SSM, through their Rule 74.04(c)

---

[5]The petition also named other medical providers and facilities as defendants. However, the claims of negligence involving other medical providers and facilities were voluntarily dismissed by Wolfe on August 25, 2021, and September 28, 2021. Wolfe's petition also included a constitutional challenge to Missouri House Bill 393 (2005), Senate Bill 239 (2015), and to sections 490.715 and 538.210. Wolfe voluntarily dismissed his constitutional challenges on December 15, 2021.

[6]All statutory references are to RSMo 2016, as supplemented through July 16, 2021, unless otherwise indicated.

statement of uncontroverted facts and accompanying legal memorandum, argued that Wolfe's medical negligence claims relating to his surgical care for the CABG surgery through March 13, 2019, were time barred by the two-year statute of limitations described in section 516.105.

Wolfe responded to the motion and argued that commencement of the two-year statute of limitations described in section 516.105 had been tolled because Wolfe was receiving continuing care from Dr. Walker for the CABG surgery when: Wolfe stopped by Dr. Walker's office on July 26, 2019, when Dr. Walker's office directed him to take ibuprofen for his reported pain during a follow-up phone call for that visit on July 29, 2019, and when Dr. Walker ordered a CT scan and discussed the results with Wolfe on August 7, 2019. Respondents filed a reply responding to additional material facts asserted in Wolfe's response. Respondents argued that Wolfe was released from Dr. Walker's care related to the CABG surgery on March 13, 2019, and that the care Wolfe sought from Dr. Walker in July and August 2019 was not continuing care that tolled the statute of limitations.

On May 23, 2024, the trial court entered its order granting partial summary judgment ("Judgment") in favor of Dr. Walker and SSM "on all claims premised on negligence with [sic] occurred prior to July 16, 2019." Wolfe asked the trial court to certify the partial summary judgment order for interlocutory appeal pursuant to Rule 74.01(b). The trial court denied Wolfe's request because the partial summary judgment order did not "dispose of a discrete judicial unit." That was because Wolfe's petition alleged that Dr. Walker committed additional acts of medical negligence on July 26,

5

2019, and August 7, 2019, which were not covered by the order granting partial summary judgment.

On July 18, 2024, Wolfe dismissed without prejudice "all claims which remain at issue in this cause after the [Judgment] was entered[.]" The practical effect was to dismiss the allegations in Wolfe's petition that Dr. Walker committed additional acts of medical negligence on July 26, 2019, and on August 7, 2019, leaving only allegations of medical negligence that occurred before July 16, 2019. Wolfe's dismissal of all remaining claims not covered by the order of partial summary judgment thus rendered the Judgment final for purposes of appeal. *See Bhoot v. 701-709 NE Woods Chapel Road, LLC*, 704 S.W.3d 710, 721 (Mo. App. W.D. 2024) (citation omitted) (finding that the entry of a "final judgment" is a prerequisite to appellate jurisdiction and that a judgment is "final" if it "resolves all claims by and against all parties . . .").

Wolfe appeals.

## Standard of Review

"This Court reviews grants of summary judgment *de novo*." *Templeton v. Orth*, 685 S.W.3d 371, 374 (Mo. banc 2024) (quoting *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020)). "Summary judgment is proper only if the moving party establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citation omitted). "A genuine issue of fact exists when the record contains competent evidence that two plausible, but contradictory, accounts of essential facts exist." *Id.* (citing *IT Comm. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. banc 1993)). "In reviewing summary judgment on appeal, the record is viewed in the light most favorable to the party against whom summary judgment was entered. That party is entitled to all reasonable inferences from the record." *Id.* (internal citations omitted).

## Analysis

Wolfe raises three points on appeal each arguing that the trial court committed error when it granted summary judgment in favor of Respondents.[7] In Point One, Wolfe argues that the trial court erred as a matter of law because Wolfe was receiving

---

[7]Wolfe's points on appeal do not follow the framework outlined in Rule 84.04(d)(C) because they do not explain ***in summary fashion*** "why the legal reasons, in the context of the case, support the claim of reversible error." Instead, perhaps cognizant that our review of the grant of summary judgment is limited to a review of the facts that have properly come into the record via Rule 74.04(c) paragraphs and responses, Wolfe expressly outlined numerous Rule 74.04(c) paragraphs in his points relied on. This is not proper. However, because we are nonetheless able to discern Wolfe's arguments from his points relied on, we exercise our discretion *ex gratia* to review Wolfe's points on the merits.

7

continuing care from Dr. Walker that tolled the statute of limitations. In Point Two, Wolfe contends that the trial court erred as a matter of law because the grant of summary judgment was not based on a "material fact" and was instead based on an evidentiary fact. In Point Three, Wolfe asserts that the trial court erred as a matter of law by improperly resolving conflicts in "contested facts" in favor of Respondents before granting summary judgment on the basis of the statute of limitations.

We address Wolfe's first and third points together as the crux of both arguments is Wolfe's claim that the summary judgment record either established, or was controverted as to whether, Wolfe was receiving continuing care from Dr. Walker related to his CABG surgery when Wolfe contacted Dr. Walker's office on July 26, 2019 and when Dr. Walker ordered a CT scan and met with Wolfe on August 7, 2019.

***The trial court did not err in granting summary judgment in favor of Respondents because the uncontroverted material facts in the summary judgment record establish that Wolfe was not receiving continuing care from Dr. Walker that would toll the two-year statute of limitations applicable to Wolfe's medical negligence claims which pre-date July 16, 2019. (Point One and Point Three)***

The "statute of limitations . . . is an affirmative defense that 'seeks to defeat or avoid a plaintiff's cause of action, and alleges that even if plaintiff's petition is true, plaintiff cannot prevail because there are additional facts that permit the defendant to avoid legal responsibility.'" *Charles v. Oak Park Neighborhood Ass'n*, 685 S.W.3d 519, 529 (Mo. App. W.D. 2023) (quoting *Templeton v. Cambiano*, 558 S.W.3d 101, 104 (Mo. App. W.D. 2018)). In Missouri, the statute of limitations for causes of action against health care and mental health providers is set forth in section 516.105, which provides that all actions against "physicians, hospitals . . . and any other entity providing health

8

care services . . . for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of[.]" Section 516.105.1. Section 516.105.1(1)-(3) describes three exceptions to the two-year statute of limitations if: the neglect complained of involves a foreign object being left within the body of a living person, the neglect involves the medical provider's failure to inform a patient of the results of medical tests, or the patient is a minor child at the time the medical services are provided.

The acts of medical neglect complained of in Wolfe's petition occurred between February 13, 2019, and March 13, 2019, when Wolfe was released from Dr. Walker's care related to the CABG surgery. Wolfe's petition was plainly filed more than two years after this time frame. Wolfe does not contend that the statutory exceptions set forth in section 516.105.1(1)-(3) apply to extend the commencement of the two-year statute of limitations applicable to his medical negligence claims.

Instead, Wolfe relies on a fourth, non-statutory, exception to the two-year statute of limitations known as the "continuing care" exception. First recognized by the Missouri Supreme Court in *Thatcher v. De Tar*, 173 S.W.2d 760 (Mo. 1943), the continuing care exception is itself a defense to the defense of the statute of limitations and operates to toll the commencement of the statute of limitations so long as a "physician's 'treatment is continuing and of such a nature as to charge the medical man with the duty of continuing care and treatment which is essential to recovery . . . .'" *Templeton*, 685 S.W.3d at 374 (quoting *Thatcher*, 173 S.W.2d at 762). Under this doctrine, the patient, "in the face of a short statute of limitations, is not forced to choose

9

between interrupting a course of treatment by suing their physician or losing their cause of action." *Id.*

The "continuing care" exception, however, is not limitless.

The duty to attend the patient continues [and, therefore, the statute of limitations is tolled] so long as required unless the physician-patient relationship is ended by (1) the mutual consent of the parties, (2) the physician's withdrawal after reasonable notice, (3) the dismissal of the physician by the patient, or (4) the cessation of the necessity that gave rise to the relationship.

*Id.* at 374 (quoting *Weiss v. Rojanasathit*, 975 S.W.2d 113, 119-20 (Mo. banc 1998)). The fourth method for terminating the physician-patient relationship, the cessation of the necessity that gave rise to the relationship, "is 'the outer limit to which the duty of "continuing care" can extend.'" *Id.* (quoting *Newton v. Mercy Clinic East Communities*, 596 S.W.3d 625, 628 (Mo. banc 2020)). Stated differently, "the duty to provide 'continuing care' ends when the necessity that gave rise to that duty has ended unless, before the cessation of that necessity, the parties terminate that duty by jointly agreeing to end the relationship, the physician withdraws after reasonable notice, or the patient dismisses the physician." *Id.* (citing *Newton*, 596 S.W.3d at 628).

Because cessation of the necessity giving rise to the physician-patient relationship describes the outer limit of "continuing care," most reported cases addressing application of the continuing care exception to toll the statute of limitations focus on whether "care" relied on by a patient to sweep all prior allegations of medical negligence into the purview of the statute of limitations was a part of a continued course of treatment for the condition giving rise to the physician-patient relationship in the first place.

10

"'[C]ontinuing care' only exists if a patient is actually receiving continuing treatment from the health-care provider for the condition on which the claim of negligence is based." *Tiemann v. SSM Reg'l Health Servs.*, 632 S.W.3d 833, 846 (Mo. App. W.D. 2021). In contrast, "continuing care" is not established "merely because the patient later requires treatment for complications arising from the health-care provider's negligence, or because the health-care provider knew, or should have known, of the patient's need for further treatment." *Id.* (citing *Newton*, 596 S.W.3d at 628-29).

### A. The uncontroverted summary judgment record established that the physician-patient relationship between Wolfe and Dr. Walker and SSM related to Wolfe's CABG surgery ended following a post-surgical follow-up appointment on March 13, 2019 because the necessity for continued care had ended for the condition giving rise to the creation of the relationship. (Point One)

Wolfe's first point relied on contends that the trial court erred as a matter of law when it concluded that the CT scan ordered and reviewed by Dr. Walker on August 7, 2019, did not constitute "continuing care" that tolled the commencement of the two-year statute of limitations described in section 516.105. Specifically, Wolfe challenges the Judgment's express reliance on Respondents' uncontroverted fact number 9, and Wolfe's response to that uncontroverted fact, to conclude as a matter of law that the statute of limitations began running on March 13, 2019, and, thus, had expired prior to the filing of Wolfe's petition.

Uncontroverted fact number 9 in the Respondents' statement of uncontroverted material facts stated: "[a]s of March 13, 2019, [Wolfe] did not have any additional appointments scheduled with Dr. Walker, Dr. Walker told him he did not need to return

11

to see her, and [Wolfe] was released from surgical care." In support of this fact, Respondents cited deposition testimony from Dr. Walker, Wolfe, and Wolfe's spouse, establishing that both Dr. Walker and Wolfe understood on March 13, 2019, that Dr. Walker did not intend to perform surgery to repair Wolfe's sternal non-union, that there were no plans for any future treatment or appointments related to Wolfe's CABG surgery, and that Dr. Walker told Wolfe he was released from surgical care.

In his Rule 74.04(c) response to uncontroverted fact number 9, Wolfe denied that he was "released from surgical care." However, general denials are not sufficient to create a controverted fact. Rule 74.04(c)(2) provides that a denial of a summary judgment movant's factual statements "may not rest upon . . . mere allegations or denials . . . ." Instead, a denial in response to a summary judgment movant's factual statement must be supported by "specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." Rule 74.04(c)(2). Here, the only support Wolfe offered for his denial of uncontroverted fact number 9 was evidence that Dr. Walker ordered and reviewed a CT scan on August 7, 2019, after Wolfe complained of chest pains. Wolfe did not controvert that on March 13, 2019, both Dr. Walker and Wolfe understood that no future treatment or appointments related to Wolfe's CABG surgery were planned or needed and that Dr. Walker released Wolfe from care for the CABG surgery on that same date.

The trial court found that it was uncontroverted that Wolfe stopped receiving care from Dr. Walker for the CABG surgery on March 13, 2019, and that the statute of limitations period for medical negligence relating to the CABG surgery and post-surgical

12

care began to run on that date. The trial court noted that its holding was derived "from the citations listed in support of undisputed material fact number 9, even with consideration of counter citations of the Plaintiff, [which showed] that Dr. Walker had no plans for future treatment of [Wolfe] and that [Wolfe] had no plans to return for subsequent treatment after March 13, 2019." Whether characterized as termination of the physician-patient relationship by the mutual consent of the parties at the conclusion of necessary care or as the cessation of the necessity that gave rise to the physician-patient relationship in the first place, uncontroverted fact number 9 established that the physician-patient relationship between Wolfe and Dr. Walker and SSM related to Wolfe's CABG surgery ended on March 13, 2019.

Wolfe contends that evidence that Dr. Walker ordered a CT scan on August 7, 2019, was sufficient to controvert uncontroverted fact number 9 and to thus create an issue of material fact in dispute about the application of the continuing care exception. Wolfe relies primarily on *Reynolds v. Dennison*, 981 S.W.2d 641, 642-43 (Mo. App. S.D. 1998) to argue that a physician-patient relationship is not terminated if a patient later returns to receive treatment for an infection stemming from an earlier surgery despite having been released from surgical care. We need not dissect Wolfe's flawed interpretation of *Reynolds*. Even if *Reynolds* could be read as Wolfe argues, which it cannot, Wolfe conveniently ignores subsequent decisional law from this Court and controlling decisional law from our Supreme Court that contradict the holding Wolfe attributes to *Reynolds*.

13

"This Court has held 'continuing or subsequently developing damages or injuries do not start the running of section 516.105 anew,' and the statute of limitations commences to run upon the occurrence of the act of neglect, not upon ascertainment of the damage resulting from the wrong." *Tiemann*, 632 S.W.3d at 841 (quoting *Newton*, 596 S.W.3d at 629). In *Newton v. Mercy Clinic East Communities*, our Supreme Court held that the continuing care exception does not operate to continue the physician-patient relationship to include care for later discovered complications, noting:

> [i]f treatment for consequences resulting from medical negligence were part of the doctor's duty of continuing care and served to toll the statute of limitations for so long as necessary to treat such consequences, then the continuing care tolling doctrine would simply be another name for the discredited discovery doctrine because the patient would not return for such treatment unless and until he or she discovered there were consequences necessitating treatment. ***The Court declines to stretch the continuing care tolling doctrine to that extent***.

596 S.W.3d at 629 (emphasis added).

The CT scan Dr. Walker ordered on August 7, 2019, to investigate pain and discomfort Wolfe reported after attempting to start his lawnmower does not negate the uncontroverted fact that the physician-patient relationship related to Wolfe's CABG surgery was terminated on March 13, 2019, because the necessity for continued care had ended for the condition giving rise to the creation of the relationship. *See Templeton*, 685 S.W.3d at 374-75 (holding that cessation of the necessity that gave rise to the relationship terminates the physician-patient relationship).[8] Wolfe's surprise visit to Dr. Walker's

---

[8]Though Dr. Walker purportedly failed to determine that the pain and discomfort Wolfe was experiencing on August 7, 2019, was related to an infection in his chest cavity, that independent act of alleged medical negligence was not continuing care for the

14

office on July 26, 2017, and Dr. Walker's subsequent decision to order a CT scan on August 7, 2019, represent classic examples of (at best) care for later discovered complications. That conclusion is especially compelling here where the uncontroverted evidence establishes that Wolfe contacted Dr. Walker's office on July 26, 2019, after experiencing pain when attempting to start his lawnmower.

The trial court's grant of summary judgment in favor of Dr. Walker and SSM on the basis that the statute of limitations had run on Wolfe's medical negligence claims pre-dating July 16, 2019, was not legally erroneous.

Point One is denied.

**B. The trial court did not improperly resolve conflicting evidence in favor of Respondents before concluding that the continuing care exception did not apply to toll the statute of limitations for Wolfe's medical negligence claims pre-dating July 16, 2019. (Point Three)**

In Point Three, Wolfe argues that the trial court erred in entering summary judgment in favor of Respondents because to do so the trial court had to improperly resolve contested material facts in Respondents' favor. Wolfe's third point relies on the principle that: "[w]hen the evidence allows for different conclusions as to whether [the statute of limitations] has run . . . *it is a question of fact for the jury to decide*." *Id.* at 374 (citation omitted) (emphasis added).

---

CABG surgery and would at best support an independent claim of medical negligence occurring on August 7, 2019. Wolfe's petition originally asserted independent claims of medical negligence relating to Dr. Walker's care on July 26, 2019, and August 7, 2019, but those claims were dismissed after the trial court's grant of partial summary judgment on the basis of the statute of limitations as to acts of medical negligence pre-dating July 16, 2019.

Wolfe's argument misapprehends the law and mischaracterizes the relevant summary judgment record. Whether the statute of limitations has run is generally a question of law for the trial court to decide. *Id.* (citation omitted). The issue becomes a question of fact for the jury to decide only if factual evidence material to resolving the issue is in dispute and could allow for different conclusions. *Id.* (citation omitted).

Here, the contested facts Wolfe identifies as material to resolving whether the continuing care exception applied to toll the statute of limitations were not contested. The facts Wolfe highlights from Rule 74.04(c) paragraphs in the summary judgment record are: Dr. Walker's statement during the March 13, 2019 appointment that although she was not going to undertake surgery to repair Wolfe's sternal non-union, Wolfe would always have the option to later elect to pursue a surgical remedy if he felt it warranted by increased pain or discomfort; Wolfe's surprise visit to Dr. Walker's office on July 26, 2019, complaining of chest pain that he said began after he pulled his lawnmower cord; Dr. Walker's recommendation on July 29, 2019, that Wolfe rest and take ibuprofen to address his reported injury; and Dr. Walker's ordered CT scan on August 7, 2019, where she saw signs consistent with the recent injury Wolfe reported, where she observed no changes in Wolfe's sternal dehiscence when compared to the March 13, 2019 CT scan, and after which she repeated her recommendation that Wolfe rest and take ibuprofen to address Wolfe's reported injury.

These facts were not contested. However, they were facially insufficient to establish the continuing care exception for the reasons explained in connection with our discussion of Wolfe's first point on appeal. *See Tiemann*, 632 S.W.3d at 841 (quoting

16

*Kamerick v. Dorman*, 907 S.W.2d 264, 266 (Mo. App. W.D. 1995) (finding that a phone call by a patient to physician's office with complaints "does not rise to the level of medical care, services or treatment"); *Newton*, 596 S.W.3d at 629 (finding that the failure to diagnose an infection or other complication does not constitute continuing care). The trial court properly resolved whether the statute of limitations had run as a question of law based on the uncontroverted material fact that the physician-patient relationship related to care for Wolfe's CABG surgery ended on March 13, 2019, when the necessity for that care ended. In doing so, the trial court properly recognized that the uncontroverted facts Wolfe relies on fell into the category of care for later discovered complications that does not qualify as "continuing care" for purposes of tolling the statute of limitations.

The trial court did not improperly resolve conflicts in any evidence that was material to reaching the conclusion that the physician-patient relationship between Dr. Walker and Wolfe related to care necessitated by the CABG surgery ended more than two years prior to the filing of Wolfe's petition.

Point Three is denied.

### The trial court did not err in granting summary judgment in favor of Respondents based on an evidentiary fact that was not a material fact. (Point Two)

In his second point on appeal, Wolfe argues that the trial court erred in granting summary judgment in favor of Respondents because uncontroverted fact number 9, upon which the Judgment expressly relied, was not a "material" fact as required by Rule 74.04 and was instead an "evidentiary" fact.

"Summary judgment is only proper if the moving party establishes that there is no genuine issue as [to] the material facts and that the movant is entitled to judgment as a matter of law." *Ludwig v. Mo. Soybean Merch. Council*, 691 S.W.3d 13, 20 (Mo. App. W.D. 2024) (quoting *Green*, 606 S.W.3d at 115-16). "A material fact in the context of summary judgment is one from which the right to judgment flows" and "[o]nly genuine disputes as to material facts preclude summary judgment." *Id.* (quoting *Green*, 606 S.W.3d at 115-16).

As we have previously explained, Respondents' uncontroverted fact number 9 established that as of March 13, 2019, neither Dr. Walker nor Wolfe contemplated the need for future treatment related to Wolfe's CABG surgery and Wolfe was released from Dr. Walker's care related to the CABG surgery. Judgment flowed from this fact as a matter of law as the fact supported the trial judge's conclusion that the statute of limitations began to run on March 13, 2019, when the physician-patient relationship between Dr. Walker and Wolfe related to the CABG surgery terminated. As a result, uncontroverted fact number 9 is a "material" fact and not merely an evidentiary fact.

Point Two is denied.

### Conclusion

The trial court's Judgment is affirmed.

_____
Cynthia L. Martin, Presiding Judge

All concur

18